IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT J. PICKLE, | : |
| Petitioner, | : |
| v. | : Civil Action No. 18-680-RGA |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
| Respondents.[1] | : |

## MEMORANDUM OPINION

Robert Pickle. *Pro se* Petitioner.

Kathryn J. Harrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

August 23, 2021
Wilmington, Delaware

---

[1] The Court has substituted Warden Robert May for former Warden G.R. Johnson, an original party to the case. *See* Fed. R. Civ. P. 25(d).

ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Robert J. Pickle is an inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware. Petitioner filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1; D.I. 7) The State filed an Answer in opposition, asserting that the Petition should be dismissed as time-barred or, alternatively, as procedurally barred. (D.I. 17) Petitioner filed a Reply. (D.I. 32) For the reasons discussed, the Court will dismiss the Petition.

## I. BACKGROUND

In January 2014, Petitioner was indicted in Delaware on twenty-six counts of third degree rape, one count of endangering the welfare of a child, and one count of providing alcohol to an underage person. (D.I. 18-1 at 2, Entry No. 5; D.I. 17 at 1) Petitioner's charges stemmed from his sexual relationship with a fourteen-year-old boy when Petitioner was forty-five years old. Petitioner pled guilty to five counts of third degree rape on April 2, 2014, and the Delaware Superior Court immediately sentenced him to 125 years in prison, suspended after twenty-five years for decreasing levels of supervision. (D.I. 17 at 1; D.I. 18-7; D.I. 19-5 at 1-3) Petitioner did not appeal his convictions or sentence.

Petitioner filed a motion for reduction of sentence on June 23, 2014 and a motion for modification of sentence on August 14, 2014. (D.I. 18-1 at 2, Entry Nos. 12, 13) The Superior Court denied both motions on August 27, 2014. (D.I. 18-1 at 2, Entry No. 14) Petitioner did not appeal that decision.

On December 17, 2014, Petitioner filed in Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("initial Rule 61 motion"). (D.I. 18-1 at 2-3, Entry No. 15) The Superior Court Prothonotary rejected the initial Rule 61 motion

as non-compliant on March 2, 2015 because it was not signed. (D.I. 18-1 at 3, Entry No. 16) On March 9, 2015, Petitioner filed a signed Rule 61 motion ("Rule 61 motion") which, due to court error, was not docketed until February 22, 2017. (D.I. 18-1 at 3, Entry No. 17) After holding an evidentiary hearing, the Superior Court denied the Rule 61 motion on December 4, 2017. *See State v. Pickle*, 2017 WL 6034624, at \*6 (Del. Super. Ct. Dec. 4, 2017). Petitioner filed a notice of appeal, but the Delaware Supreme Court dismissed the appeal on January 24, 2018, as untimely filed; the deadline for filing a notice of appeal was January 3, 2018. *See Pickle v. State*, 179 A.3d 823 (Table), 2018 WL 559096 (Del. Jan. 24, 2018).

In May 2018, the Court received Petitioner's Motion for Leave to Proceed *In Forma Pauperis* ("IFP Motion"), which prompted the opening of a new civil case. (D.I. 1) Petitioner filed an actual habeas petition in July 2018, which asserts four grounds for relief: (1) the police violated Petitioner's constitutional rights by stacking the charges against him, failing to charge the victim with sexual extortion and rape, and failing to look at evidence (an iPhone and an iPad) that would have shown that the victim was the aggressor; (2) the State violated Petitioner's constitutional rights by stereotyping Petitioner because of his age and sexual orientation, failing to timely indict Petitioner, and failing to look into Petitioner's or the victim's mental health issues; (3) defense counsel provided ineffective assistance by discriminating against Petitioner because of his age and also by failing: (a) to meet with Petitioner in time to prepare his case; (b) to investigate and to take Petitioner's defense seriously; and (c) to look into Petitioner's mental health issues; and (4) the Superior Court violated Petitioner's constitutional rights by misplacing documents, failing to acknowledge and consider Petitioner's defense, failing to address Petitioner's mental health issues, and failing to adequately establish the voluntariness of

2

Petitioner's guilty plea. (D.I. 7) The Court will address the State's arguments that the Petition should be dismissed as time-barred and as procedurally barred.

## II. STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is applied on a claim-by-claim basis and is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling); *Fielder v. Varner*, 379 F.3d 113, 117-18 (3d Cir. 2004) (AEDPA's limitations period applies on a claim-by-claim basis).

Petitioner does not allege, and the Court cannot see, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Consequently, the Court concludes that the one-year period of limitations for this case began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

3

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on April 2, 2014, and he did not appeal that judgment. Therefore, Petitioner's conviction became final on May 2, 2014. Applying the one-year limitations period to that date, Petitioner had until May 4, 2015 to timely file a habeas petition.[2] *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run).

In this case, Petitioner filed an IFP Motion on April 25, 2018 and then filed his actual Petition on July 2, 2018.[3] Since the IFP Motion presents the same grounds for relief as the Petition, the Court construes the IFP Motion as being part of the Petition or, in essence, as the initial Petition. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-46 (3d Cir. 2013). Petitioner filed both the IFP Motion and Petition more than three years after AEDPA's

---

[2]The one-year limitations period actually ended on May 2, 2015, which was a Saturday. Therefore, Petitioner had until the end of the day on Monday May 4, 2015 to timely file a habeas petition. *See* Fed. R. Civ. P. 6(a)(1)(C).

[3]Pursuant to the prisoner mailbox rule, the Court adopts April 25, 2018 as the filing date for the Motion to Proceed IFP because that is the date he signed the Motion and July 2, 2018 as the filing date for the Petition because that is the date on the certification of mailing. (D.I. 1 at 3; D.I. 7 at 19) *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

4

one-year deadline. Thus, the instant proceeding is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers,* 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could have been filed even if the appeal was not eventually filed. *Id.* at 424. In contrast, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia,* 247 F.3d 539, 542 (3d Cir. 2001).

Here, fifty-one days of AEDPA's limitations period had already run when Petitioner filed his motion for reduction of sentence on June 23, 2014. The Superior Court denied the motion for reduction of sentence (along with Petitioner's motion for modification of sentence filed on August 14, 2014) on August 28, 2014, and Petitioner did not appeal that decision. Consequently, the motion for reduction of sentence tolled the limitations period from June 23, 2014 through September 29, 2014, which includes the thirty-day appeal period.[4]

---

[4] The thirty-day appeal period actually expired on September 27, 2014, which was a Saturday. Thus, time to appeal extended through the end of the day on Monday, September 29, 2014. *See* Del. Supr. Ct. R. 11.

5

The limitations clock started to run again on September 30, 2014, and ran another 160 days until March 9, 2015, the date on which Petitioner properly filed his Rule 61 motion in the Delaware Superior Court. The Superior Court denied the Rule 61 motion on December 4, 2017. Although Petitioner filed a notice of appeal from that decision, the Delaware Supreme Court dismissed the appeal as untimely on January 24, 2018. In these circumstances, the Rule 61 motion tolled the limitations period from March 9, 2015 through January 3, 2018, which includes the thirty-day appeal period. *See Evans v. Chavis*, 546 U.S. 189, 141 (2006) (noting statute of limitations is tolled for time during which properly filed collateral review application is pending in state court; and "[t]he time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law.").

The limitations clock started to run again on January 4, 2018. Adding the remaining 154 days of the limitations period to that date results in June 7, 2018 being the last day on which Petitioner could have timely filed a habeas petition. The State contends that the instant proceeding should be dismissed as untimely because Petitioner filed his Petition on July 2, 2018, almost one full month after the expiration of the limitations period. (D.I. 17 at 7) The Court agrees that the instant proceeding would be time-barred if the July 2, 2018 Petition were used as the relevant document for the limitations calculation. However, the Court considers the IFP Motion as the relevant document for calculating the timeliness of this proceeding for two reasons: (1) AEDPA's limitations period is not a jurisdictional bar to the filing of a habeas

petition;[5] and (2) the Court has a duty to give the *pro se* filings of prisoners the benefit of the doubt. Since Petitioner filed the IFP Motion more than one full month before the expiration of the limitations period, the instant proceeding is not time-barred.

## III. EXHAUSTION AND PROCEDURAL DEFAULT

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447,

---

[5]*See Miller v. New Jersey State Dep't of Corrs.*, 145 F.3d 616, 617-18 (3d Cir. 1999).

7

451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's

8

procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Examples of external impediments which have been found to constitute cause in the procedural default context include interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel." *Wise v. Fulcomer,* 958 F.2d 30, 34 n.9 (3d Cir. 1992) (cleaned up). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier,* 477 U.S. at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

In this case, the Court agrees with the State's argument that it must dismiss the Petition as procedurally barred from habeas review. Although Petitioner presented all four instant habeas Claims to the Superior Court in his Rule 61 motion and to the Delaware Supreme Court on post-conviction appeal, the Delaware Supreme Court denied the appeal as untimely pursuant to

9

Delaware Supreme Court Rule 6. *See Pickle*, 2018 WL 559096, at *1.[6] By applying the procedural bar of Delaware Supreme Court Rule 6, the Delaware Supreme Court articulated a "plain statement" under *Harris* that its decision rested on state law grounds. Since Delaware Supreme Court Rule 6 constitutes an independent and adequate state procedural rule,[7] the Court must treat the instant Claims as exhausted but procedurally defaulted, meaning that it cannot review their merits absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the Claims are not reviewed.

In an attempt to establish cause, Petitioner asserts that that he gave his Rule 61 notice of appeal to Sgt. Morris[8] on January 1, 2018 for mailing, which was two days before the post-conviction appeal deadline. (D.I. 7 at 7) He also contends that it took "nine days" for his notice of appeal to reach Dover Delaware via the mail system because of a blizzard, holidays, and short prison staff. (D.I. 7 at 7, 11, 14, 16, 18-19)

As an initial matter, the Court notes, "Delaware has not adopted a rule similar to the federal prison mailbox rule, which deems a notice of appeal as filed at the time it is delivered to prison authorities." *Smith v. State*, 2021 WL 2766407, at *1 (Del. June 30, 2021). Instead, an appeal is not considered filed until it is received by the Delaware Supreme Court. *See* Del. Supr. Ct. R. 10(a) ("All notices of appeal, briefs, appendices, motions or other pages shall be filed with the Clerk of the Court or with a Deputy Clerk in any county during their regular business hours.

---

[6]"Time is a jurisdictional requirement." *Pickle*, 2018 WL 559096, at *1.

[7]*See Smith v. Williams,* 2003 WL 22937773, at *2-3, 5 (D. Del. Sept. 30, 2003).

[8]The Petition says, "was placed in the hand of Sgt. Morris on the first day of January 2018." (D.I. 7 at 7) The Court infers the subject of that sentence as being the Rule 61 notice of appeal.

10

Filing by mail in the office of the Clerk of the Court in Dover is permissible, provided that filing shall not be deemed to be complete until the paper has been received in the office of the Clerk.").

To the extent Petitioner's reference to Sgt. Morris constitutes an implicit argument that the cause of his default was a prison official's interference with outgoing mail,[9] the Court is not persuaded. Petitioner has not provided any evidence regarding the date on which he provided the notice of appeal to Sgt. Morris[10] or any evidence indicating that Sgt. Morris did not promptly

---

[9]The Court notes that Petitioner's Rule 61 notice of appeal contains the following notations/stamps from the Delaware Supreme Court: "EFiled: Jan 08 2018 02:13PM EST," "DELAWARE SUPREME COURT FILED 2018 JAN – 8 P 12:44 CLERK DOVER." (D.I. 18-2 at 1) Since December 4, 2006, the Delaware Supreme Court has required "all appeals from Superior Court criminal matters" "to be filed electronically using the LexisNexis File & Serve System." https://courts.delaware.gov/supreme/docs/Efilingpressrelease120606.pdf; see Del. Supr. Ct. R. 10.1. However, Delaware Supreme Court Rule 10.2(3) provides the following exception to the electronic filing requirement:

> A party to a case who is not represented by an attorney may file and serve all documents on paper or may register with LexisNexis File & Serve to file and/or serve documents electronically. If paper is delivered to the Court for docketing in cases subject to electronic filing, the Clerk will electronically upload such document(s) to LexisNexis File & Serve.

Del. Supr. Ct. R. 10.2(3). Petitioner's reference to a delay in obtaining money for postage, his reference to a blizzard and assertion that it took nine days for the notice to reach Dover, and the fact that neither party mentions electronic filing indicate that Petitioner's *pro se* Rule 61 notice of appeal was not electronically filed. Rather, based on the record and the parties' contentions, the Court presumes that Petitioner's Rule 61 notice of appeal was mailed to the Delaware Supreme Court and that the "EFiled" notation on the notice was due to the Delaware Supreme Court Clerk's compliance with the procedure outlined in Delaware Supreme Court Rule 10.2(3).

[10]For instance, Petitioner does not provide a copy of the prison mail log or a copy of his inmate account statement to establish the date on which he mailed his notice of appeal. *See, e.g., Harris v. State,* 240 A.3d 19 (Table), 2020 WL 6058295, at *1 (Del. Oct. 12, 2020) (using a prison mail log from the James T. Vaughn Correctional Center to determine when prisoner mailed his notice of appeal); *Howard v. Coupe,* 147 A.3d 749 (Table), 2016 WL 4699160, at *1 (Del. Sept. 7, 2016) (prisoner supplied Delaware Supreme Court with a copy of his inmate account statement to show the date on which a debit for postage occurred in an attempt to demonstrate when he

11

place the notice in the prison's outgoing mail upon receipt. *See, e.g., Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (finding that petitioner established cause for the default by providing a receipt demonstrating he provided his application to prison mail officials five days prior to the deadline); *Hamm v. Erdos*, 2020 WL 2494464, at*4 (S.D. Ohio May 14, 2020) (finding that petitioner established cause for default because he supported his contention that he timely provided the notice of appeal to the prison officials with a cash withdrawal slip establishing the date and an affidavit), *report & recommendation adopted*, 2020 WL 3077564, at *1 (S.D. Ohio June 10, 2020). Although Petitioner attested to the veracity of his assertions in the Petition with the following statement: "I declare (or certify, verify, state) under penalty of perjury that the foregoing is true and correct . . . ." (D.I. 7 at 19), the Court does not view the attestation of veracity as sufficient evidence to establish cause for Petitioner's default. Significantly, when given the opportunity to clarify the circumstances surrounding the mailing and filing of his Rule 61 notice of appeal in his Reply to the State's Answer, Petitioner failed to do so and, instead, criticized the State for being "more worried about proper procedures I's dotted T's crossed and time bars than the FACTS." (D.I. 32 at 1) The Court views Petitioner's failure to provide support for his alleged date of mailing/filing and his assertion about the State's

---

placed his appeal in the prison mail system). Additionally, and in contrast with other *pro se* post-conviction motions Petitioner filed in the Delaware state courts, Petitioner's Rule 61 notice of appeal is devoid of any certificate of service or certificate of mailing, which would provide another manner to determine the date on which he supplied the notice to Sgt. Morris. (*Compare* D.I. 18-9 at 5 (certificate of service for sentence reduction motion), D.I. 18-10 at 5 (certificate of service for sentence modification motion), D.I. 18-12 at 6 (certificate of service for Rule 61 motion), D.I. 18-15 at 8 (certificate of service for amended *pro se* Rule 61 motion, *with* D.I. 18-2 (Rule 61 notice of appeal)).

unfair focus on "proper procedures" as constituting an implicit concession to the State's argument that he cannot establish cause for his default.[11]

In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine, because his unsupported and self-serving assertions that the victim raped him and "used sex to extort" him do not constitute new reliable evidence of his actual innocence.[12] (*See* D.I. 7 at 4-7; D.I. 13 at 4; D.I. 32 at 5) The fact that there is a videotape of Petitioner's confession to police that he had sex with the fourteen-year old victim when he (Petitioner) was forty-five years old casts further doubt on Petitioner's current assertions of innocence. (*See* D.I. 18-19 at 1; D.I. 18-27 at 9) Accordingly, the Court will deny the Petition as procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).

---

[11]Even if the Court accepts as true Petitioner's contention that he provided the notice of appeal to Sgt. Morris on January 1, 2018, the Court questions whether providing the notice of appeal on New Year's Day—a holiday—for mailing two days prior to the filing deadline can demonstrate cause given the absence of evidence suggesting that Sgt. Morris or the prison mail officials did not act promptly in mailing the notice of appeal. *See, e.g., Love v. Warden*, 2017 WL 2728597, at *3 (S.D. Ohio June 26, 2017) (finding petitioner failed to establish cause for default because he "waited until just two days before the filing deadline to submit his Rule 26(B) application to prison officials" and failed to provide "any evidence indicating that the prison mail room did not act promptly in mailing [his] materials."); *Sanders v. Norris*, 2007 WL 1965392, at *4 (E.D. Ark. July 2, 2007) ("It appears to the court his placing the petition in the mail only two days before the deadline was the cause of the of the untimeliness of [petitioner's Rule 37] petition, not any interference by state officials."). When the petitioner leaves no margin for error, as, at best, was the case here, the petitioner faces a great challenge in establishing cause for the consequent late filing.

[12]As noted by the Delaware Department of Justice's Actual Innocence Program when denying his application to the Actual Innocence Program, Petitioner "does not provide any new physical, scientific or documentary evidence" of his innocence. (D.I. 7 at 61)

13

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that the instant Petition should be dismissed in its entirety as procedurally barred. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, the Court will dismiss the Petition in its entirety as procedurally barred. An appropriate Order will be entered.

14